IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DAN MULLINS,                          :

        Plaintiff,              :
                                Case No. 3:08cv363

vs.                                   :
                             JUDGE WALTER HERBERT RICE

GOODMAN DISTRIBUTION, INC.,           :

        Defendant.              :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(DOC. #17)

---

Plaintiff Dan Mullins ("Plaintiff" or "Mullins") was formerly employed by

Defendant Goodman Distribution, Inc. ("Defendant" or "Goodman").[1]  Plaintiff

alleges in his Complaint (Doc. #1) that the Defendant violated the Uniformed

Services Employment and Redeployment Rights Act ("USERRA"), 38 U.S.C.

§ 4301, et seq., by refusing to promote him, by denying him raises and bonuses

and by firing him.[2]

---

[1]Goodman is a manufacturer and distributor of residential air conditioning and
heating products.

[2]In his Complaint, Plaintiff has also set forth a claim under the common law of Ohio
for discharge in violation of the public policy set forth in the USERRA.
Subsequently, he voluntarily dismissed that claim.  See Doc. #8.

In January, 2003, Mullins was hired by Goodman as a customer service representative, to work in its Dayton branch.[3]  Before he was hired, Mullins had served in the U.S. Army, a fact which was included on the resumé he submitted to Defendant when he applied for a job.  In March, 2005, while employed by the Defendant, Plaintiff enlisted in the Ohio National Guard.  In September, 2005, Plaintiff received orders that his Ohio National Guard unit would be deployed to Iraq the following month.  He informed Defendant of that fact.  While he was deployed in Iraq, Plaintiff injured his back and neck.  During the period of his deployment, Plaintiff was not given raises or bonuses by the Defendant.

In December, 2006, Mullins returned to work with the Defendant in the position he had occupied before his National Guard unit had deployed.  In January, 2007, Defendant's then Branch Manager, Derrick Card, resigned his position. Defendant posted the opening internally and externally and accepted applications to fill that position from interested individuals who were its current employees, as well as individuals who were not.  Plaintiff applied for the position, and was interviewed by Dave Spitz ("Spitz"), Vice President of Defendant's Northeast Division, which includes Dayton.  Mullins was not selected; rather, Rod Neal ("Neal"), a veteran of the Air Force, was selected as Branch Manager for the Dayton branch.  After interviewing Mullins, Spitz told the Plaintiff that he would

---

[3]Given that this litigation comes before the Court on the Defendant's Motion for Summary Judgment (Doc. #17), the Court sets forth the facts and circumstances giving rise to this litigation in the manner most favorable to the Plaintiff, the party against whom summary judgment has been sought.

have been given the Branch Manager's position, if he had not been gone for such a long time, referring to his deployment in Iraq.[4]

On July 11, 2007, Neal gave Plaintiff a written disciplinary warning, for violating the Defendant's cash handling policy. Neal charged Plaintiff with having left his money bag, unsecured, on the top of a counter during business hours and having left his cash drawer unlocked the night before, even though customers' checks were inside the drawer. This written warning also contained notice that any similar infractions in the future would result in further progressive discipline, up and including termination of his employment.

On January 23, 2008, Neal gave Plaintiff a final disciplinary warning, which resulted from his alleged violation of the Defendant's policies concerning its Furnace Replacement Program.[5] Under that program, the purchaser of new furnace manufactured by Goodman could receive a discount, if he was purchasing a furnace to replace a qualifying older-model manufactured by Defendant. In late 2007, Spitz and Neal learned that a customer was taking advantage of the program, by presenting fraudulent proof that the furnace being replaced was a qualifying one. Consequently, in December, 2007, the program was modified to require that customers seeking to participate physically return the old furnace, without any parts removed, to the Dayton branch. In particular, Defendant wanted to ensure that the customer's old furnace had its original nameplate on it,

_____

[4]Neal subsequently told the Plaintiff that he (Neal) was aware that Plaintiff had applied for the Branch Manager position, but had not been selected for it because of his overseas service with the Ohio National Guard.

[5]The Furnace Replacement Program has also been referred to as the Tubular Upgrade Program.

indicating that Goodman had been its manufacturer.  On January 23, 2008, Plaintiff, as part of the program, accepted a furnace from a customer from which the original nameplate had been removed.  As a consequence, he was given the final warning.[6]

On February 28, 2008, Goodman terminated Plaintiff's employment, because he violated one of the Defendant's policies while on final warning.  In this instance, Mullins failed to have a customer sign the correct packing list for an order that had been picked up, despite the fact that Defendant's policy required that the customer inspect the order and sign such a list.

This case in now before the Court on the Defendant's Motion for Summary Judgment (Doc. #17).  As a means of analysis, the Court will initially set forth the procedural standards it must apply whenever ruling on a motion seeking summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on

---

[6]The final warning, like the previous written warning Mullins had been given, contained the notice that any similar infractions in the future would result in further progressive discipline, up and including termination of his employment.

> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Id. at 323. See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991)

(The moving party has the "burden of showing that the pleadings, depositions,

answers to interrogatories, admissions and affidavits in the record, construed

favorably to the nonmoving party, do not raise a genuine issue of material fact for

trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The

burden then shifts to the nonmoving party who "must set forth specific facts

showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the

moving party has met its initial burden, the nonmoving party must present

evidence that creates a genuine issue of material fact making it necessary to

resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d

1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for

the proposition that a party may move for summary judgment by demonstrating

that the opposing party will not be able to produce sufficient evidence at trial to

withstand a directed verdict motion (now known as a motion for judgment as a

matter of law. Fed.R.Civ.P. 50).  Street v. J.C. Bradford & Co., 886 F.2d 1472,

1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary

judgment cannot rest on its pleadings or merely reassert its previous allegations.  It

is not sufficient to "simply show that there is some metaphysical doubt as to the

material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986).  See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18

F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of

evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  <u>Celotex Corp.</u>, 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  <u>Hancock v. Dodson</u>, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all <u>reasonable</u> inferences in the favor of that party.  <u>Anderson</u>, 477 U.S. at 255 (emphasis added).  If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder.  10A Wright, Miller & Kane, <u>Federal Practice and Procedure</u>, § 2726.  In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  <u>Interroyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), <u>cert</u>. <u>denied</u>, 494 U.S. 1091 (1990).  <u>See</u> <u>also</u> <u>L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc.</u>, 9 F.3d 561 (7th Cir. 1993); <u>Skotak v. Tenneco</u>

Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992)

("Rule 56 does not impose upon the district court a duty to sift through the record

in search of evidence to support a party's opposition to summary judgment ....").

Thus, a court is entitled to rely, in determining whether a genuine issue of material

fact exists on a particular issue, only upon those portions of the verified pleadings,

depositions, answers to interrogatories and admissions on file, together with any

affidavits submitted, specifically called to its attention by the parties.


With its motion, Goodman seeks summary judgment on all of Plaintiff's

claims under the USERRA, i.e., that Defendant violated that statute by failing to

promote him, by denying him raises and bonuses while he was deployed in Iraq and

by terminating his employment.  As a means of analysis, the Court will discuss the

parties' arguments concerning those three claims in the above order.  However,

before engaging in the analysis, the Court will review the provisions of the

USERRA which apply to all of Plaintiff's claims.

The provision of the USERRA which prohibits discrimination in employment

is 38 U.S.C. § 4311, which provides:

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
> *          *          *
> (c) An employer shall be considered to have engaged in actions prohibited—
>> (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have

been taken in the absence of such membership, application for membership, service, application for service, or obligation for service ....

In accordance with that statutory language, the plaintiff bears the initial burden of demonstrating that his military service was a motivating factor for the employer's action. Hance v. Norfolk Southern Ry. Co., 571 F.3d 511, 518 (6th Cir. 2009). If the plaintiff discharges his initial burden, "'the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason.'" Id. (quoting Sheehan v. Dept. of Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001)).

A plaintiff may meet his burden with either direct or circumstantial evidence. Id. With respect to circumstantial evidence, the Sixth Circuit explained in Hance:

> Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

Id. (quoting Sheehan, 240 F.3d at 1014). "'Military status is a motivating factor if the defendant relied on, took into account, considered or conditioned its decision on that consideration.'" Petty v. Metropolitan Government of Nashville-Davidson County, 538 F.3d 431, 446 (6th Cir. 2008) (quoting Coffman v. Chugach Support Servs., 411 F.3d 1231, 1238 (11th Cir. 2005)). Accord Martin v. AutoZone, Inc., 411 F. Supp.2d 872, 880 (S.D.Ohio 2005); Steenken v. Campbell County, 2007 WL 837173 at *4 (E.D.Ky. 2007); Fink v. City of New York, 129 F. Supp.2d 511,

520 (E.D.N.Y. 2001); Robinson v. Morris Moore Chevrolet-Buick, Inc., 974 F.

Supp. 571, 576 (E.D.Tx. 1997).


1.  Denial of the Promotion to Branch Manager (First Claim for Relief in Plaintiff's Complaint)

In seeking summary judgment on Plaintiff's claim that Goodman violated the

USERRA by failing to promote him to the position of Branch Manager, the

Defendant initially argues that the evidence fails to raise a genuine issue of material

fact on the question of whether Mullins' military service was a motivating factor in

its decision to promote Neal, rather than Plaintiff, to that position.

Construing the evidence in the manner most favorable to the Plaintiff, the

party against whom summary judgment has been sought, this Court is unable to

agree.  In ¶ 20 of his Affidavit,[7] Plaintiff states that after interviewing him, Spitz

told him that he (Spitz) would have given him (Plaintiff) the position of Branch

Manager if he had not been gone so long, which was a reference to Mullins'

military service.  The statement of Spitz, the employee of Defendant who decided

to promote Neal rather than Mullins, that the reason Mullins was not promoted was

because he was gone so long, referring to his service in Iraq, is sufficient to

demonstrate the existence of a genuine issue of material fact on the question of

whether Plaintiff's military service was a motivating factor in Defendant's

promotion decision.

---

[7]Plaintiff's Affidavit is attached to his memorandum filed in opposition to
Defendant's Motion for Summary Judgment (Doc. #17).  See Doc. #19.

Nevertheless, Defendant argues that Neal's status as an Air Force veteran demonstrates that it does not have an anti-military bias and, thus, shows that the evidence fails to raise a genuine issue of material fact on the question of whether Mullins' military service was a motivating factor in its decision to promote Neal rather than the Plaintiff. Given that the individual who made the decision to promote Neal told Plaintiff, in essence, that he would have been promoted if his Ohio National Guard unit had not been deployed to Iraq, this Court is unable to agree.[8]

In addition, Defendant contends that Plaintiff's deposition testimony that he may have told Rita Sampson that it was going to take him a while to get back into all of the procedures at work, after he had returned from Iraq, demonstrates the

_____

[8]In support of this argument, the Defendant has submitted two unreported, Appellate Court decisions as supplemental authority, to wit: Loperena v. Scott, 2009 WL 4405483 (11th Cir. 2009) and Mumme v. Dept. of Veterans Affairs, 2009 WL 4640645 (Fed. Cir. 2009). See Doc. #29. In Loperena, the plaintiff was denied employment as a bailiff by the defendant, because he was suffering from post traumatic stress disorder as a result of having served in Iraq. The plaintiff brought suit alleging, inter alia, that the decision not to hire him violated the USERRA. The Eleventh Circuit affirmed the grant of summary judgment in favor of the defendant for the reasons set forth by the District Court in its decision. In that decision, the District Court had concluded that the plaintiff had failed to show that his military service was a motivating factor, given that the defendant routinely hired military veterans as bailiffs. In Mumme, the plaintiff, a veteran of the Marine Corps, brought a proceeding against the Department of Veterans Affairs, alleging it had violated the USERRA by failing to appoint him to the positions of safety engineer and registered nurse. In affirming the decision of the Merit Systems Protection Board denying plaintiff's challenge to his non-selection, the Federal Circuit noted, with respect the registered nurse position, "Mumme does not dispute that one of the selected candidates was himself a military veteran, a fact that tends to refute the notion that the agency was biased against Mumme's military status." Decidedly missing from both of those decisions is an indication that the decision maker made a statement similar to Spitz's. Therefore, those cases are distinguishable from the present dispute.

absence of a genuine issue of material fact concerning the question of whether

Mullins' military service was a motivating factor for Defendant's decision to select

Neal for the position of Branch Manager. This Court cannot agree, since Plaintiff's

deposition testimony does not indicate that Spitz's statement, although seemingly

evidencing an anti-military service animus, was not really so.[9]

Alternatively, Goodman argues that it is entitled to summary judgment on

this claim, because the evidence fails to raise a genuine issue of material fact on

the question of whether it would have selected Neal for non-discriminatory

reasons. Given that the Defendant will have the burden of persuasion on that

question at trial, "'it must show [at the summary judgment stage] that the record

contains evidence satisfying the burden of persuasion and that the evidence is so

powerful that no reasonable jury would be free to disbelieve it.'" Arnett v. Myers,

281 F.2d 552, 561 (6th Cir. 2002) (quoting 11 James William Moore et al.,

Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000)). According to

---

[9]In support of this argument, Defendant has placed primary reliance on Clune v. Desmond's Formal Wear, Inc., 2003 WL 21796388 (N.D.Ind. 2003). Therein, the plaintiff, who had been employed by defendant as a part-time employee, brought suit alleging that the defendant had violated the USERRA, by reducing his hours and subsequently terminating his employment. The District Court entered summary judgment in favor of defendant on both aspects of plaintiff's claim under the USERRA. With respect to plaintiff's assertion that the defendant had violated the USERRA by reducing his hours, the District Court concluded that a genuine issue of material fact, on the issue of whether plaintiff's military service was a motivating factor in the decision to reduce his hours, had not been created by the statement of the manager of the store at which plaintiff had worked to the effect that he would have been able to work more hours if he had not been gone so often. Any similarity between the manager's statement in Clune and that attributed to Spitz herein is destroyed by the plaintiff's deposition testimony, in that litigation, that the manager was merely referring to the hours plaintiff had lost during the 15 days he had recently spent on active duty with his army reserve unit. Herein, in contrast, Mullins did not testify during his deposition that there was a non-discriminatory reason for Spitz's statement.

Defendant, the position of Branch Manager for the Dayton branch involved managerial and supervisory responsibilities and Plaintiff lacked experience in both of those areas. Defendant also indicates that Neal was the most qualified applicant. Goodman has supported those assertions with Spitz's Affidavit.[10] However, given the evidence that Spitz made a statement to Plaintiff, demonstrating that he had an anti-military animus, this Court concludes that the record does not contain evidence, so powerful that no reasonable jury would be free to disbelieve it, satisfying its (Defendant's) burden of persuasion that it would have selected Neal for the position of Branch Manager anyway, for a non-discriminatory reason.

Based upon the foregoing, the Court overrules the Defendant Motion for Summary Judgment (Doc. #17), as it relates to Plaintiff's claim that the Defendant violated the USERRA by failing to promote him to the position of Branch Manager.

## II. Denial of Raises and Bonuses (Second Claim for Relief in Plaintiff's Complaint)

With his Second Claim for Relief, Plaintiff alleges that, while he was on active duty with the Ohio National Guard, Defendant denied him "bonuses and raises that he would have received had he maintained his employment." Doc. #1 at ¶ 56.[11] Plaintiff contends that, as a result, Defendant has violated the USERRA.

---

[10]Spitz's Affidavit is attached to Defendant's Motion for Summary Judgment (Doc. #17).

[11]Although Plaintiff alleges in his Complaint that the Defendant denied him bonuses and raises, he alleges only that, in March, 2006, while serving in Iraq, Defendant did not give him an annual raise. Doc. #1 at ¶ 18. Plaintiff has not otherwise identified in his Complaint or memorandum opposing Defendant's request for summary judgment any particular raise or bonus he was not given.

Defendant argues this it is entitled to summary judgment on this claim, because

Plaintiff's claim is premised on a faulty understanding of the USERRA and its

compensation system. The Plaintiff has not responded to this branch of

Defendant's Motion for Summary Judgment (Doc. #17). For reasons which follow,

this Court concludes that the Defendant is entitled to summary judgment on this

claim. The Court initially sets forth its reasons for concluding that the Defendant is

entitled to summary judgment on the aspect of this claim relating to raises,

following which it will turn to the aspect of this claim pertaining to bonuses.

> The USERRA provides, in pertinent part:

> (b)(1) Subject to paragraphs (2) through (6), a person who is absent from a
> position of employment by reason of service in the uniformed services shall
> be−
>> (A) deemed to be on furlough or leave of absence while performing
>> such service; and
>> (B) entitled to such other rights and benefits not determined by
>> seniority as are generally provided by the employer of the person to
>> employees having similar seniority, status, and pay who are on
>> furlough or leave of absence under a contract, agreement, policy,
>> practice, or plan in effect at the commencement of such service or
>> established while such person performs such service.

38 U.S.C. § 4316(b)(1).[12] Thus, courts have held that an employer does not

violate the USERRA, by treating a employee on leave while serving in the military

no differently than it would treat any other employee on leave for another reason.

See e.g., Rogers v. City of San Antonio, 392 F.3d 758, 764 (5th Cir. 2004); Fannin

v. United Space Alliance, LLC, 2009 WL 139878 (M.D.Fla. 2009). Herein, Spitz

has indicated in ¶ 18 of his Affidavit that Goodman employees on leave for

extended periods of time, for any reason, have not received merit increases during

---

[12]Paragraphs 2 through 6 of § 4316(b) are not applicable to the present dispute.

their absences. In the absence of any evidence or even argument from the Plaintiff that Goodman has given raises to employees who were on leave for reasons other than their service in the military, this Court is compelled to conclude that the Defendant did not violate the USERRA by not giving the Plaintiff a raise while he was on active duty with the Ohio National Guard.

Defendant argues that it is entitled to summary judgment on the aspect of the Second Claim for Relief in Plaintiff's Complaint, arising out of the non-payment of bonuses, because an employee on leave while in the military service is not entitled to receive compensation for the work he has missed while on leave. The Court cannot disagree with that statement of legal principle. For instance, in Koehler v. PepsiAmericas, Inc., 268 Fed. Appx. 396 (6th Cir. 2008), the Sixth Circuit noted that "[t]he USERRA exempts employers from an obligation to pay benefits that are 'wages or salary for work performed.'" Id. at 404 (quoting 38 U.S.C. § 4303(2)) (emphasis added by the Sixth Circuit). Moreover, the Plaintiff has not presented any evidence tending to demonstrate that the bonus or bonuses he was not paid were not "wages or salary for work performed." Therefore, the Court concludes that the Defendant is entitled to summary judgment on the aspect of the Second Claim for Relief in Plaintiff's Complaint arising out of bonuses.

Accordingly, the Court sustains Defendant's Motion for Summary Judgment (Doc. #17), as it relates to Plaintiff's claim that he was denied raises and bonuses in violation of the USERRA.

<u>III.  Termination (Third Claim for Relief in Plaintiff's Complaint)</u>

In the Third Claim for Relief in his Complaint, Plaintiff alleges that the Defendant violated the USERRA by terminating him, because he was gone from his employment with Defendant while serving with the Ohio National Guard in Iraq. The Defendant argues that it is entitled to summary judgment on this claim, because the evidence fails to raise a genuine issue of material fact on the question of whether a motivating factor in the Defendant's decision to terminate his employment was his service with the Ohio National Guard.  Alternatively, Defendant argues that, even if the evidence raises a genuine issue of material fact on the question of whether Mullins' service in the Ohio National Guard was a motivating factor is its decision to terminate his employment, it has demonstrated that it would have discharged him in any event, for non-discriminatory reasons, to wit: he committed a third disciplinary infraction after having been given his final warning.  Plaintiff contests both of those arguments.  As a means of analysis, the Court will initially decide whether the evidence raises a genuine issue of material fact concerning the question of whether Plaintiff's service in the Ohio National Guard was motivating factor for his discharge.  If the Court concludes that the evidence raises such a genuine issue of material fact, it will turn to the Defendant's alternative argument.

Plaintiff initially asserts that the evidence raises a genuine issue of material fact concerning the question of whether his military service was a motivating factor in Defendant's decision to discharge him, because Neal did not like him. That reason fails to convince this Court that Defendant "relied on, took into

account, considered or conditioned its decision on [Plaintiff's military status when terminating the Plaintiff's employment]." Petty, 538 F.3d at 446.

Plaintiff states in ¶ 54 of his Affidavit that, during the summer of 2007, sometime after Neal had disciplined him the first time, Neal told him that he (Plaintiff) "was out of there" because Neal did not like his attitude. According to Plaintiff, Neal explained that he (Plaintiff) was nice to co-workers and customers but not to him and, further, Plaintiff stood up to him. In that paragraph of his Affidavit, Mullins also states that Neal called his supervisor, Matt Lis ("Lis"), into the meeting. Lis also stated that he believed that Plaintiff was more friendly with customers and co-workers than he was to Neal and himself. While this evidence is sufficient to raise a genuine issue of material fact that Neal disliked or was prejudiced against Mullins, it does not raise such an issue of fact on the pertinent question of whether Neal's prejudice against the Plaintiff was predicated upon his military service. It would be unreasonable to infer that Neal acted with an anti-military bias merely because he disliked Plaintiff who had served in the military. It bears emphasis that Neal himself was an Air Force veteran. Similarly, the fact that Lis believed that the Plaintiff treated co-workers and customers better than he treated Neal and himself does not raise an inference that a motivating factor in Defendant's decision to discharge Plaintiff was his military service.

Above, this Court has noted the Sixth Circuit has indicated that the following considerations are pertinent to the issue of whether an employee's military service was a motivating factor of the employer's adverse employment action, to wit: 1) the proximity in time between the employee's military activity and the adverse employment action; 2) inconsistencies between the proffered

reason and other actions of the employer; 3) an employer's expressed hostility towards employees protected by the USERRA, together with knowledge of the plaintiff's military activity; and 4) the disparate treatment of certain employees compared to similarly situated employees, with similar work records or offenses. Hance, 571 F.3d at 518.

Herein, the Court need only consider the first two factors, since there is no evidence that Neal, who decided to impose the discipline on Plaintiff which led to the termination of his employment, had expressed any hostility towards employees protected by the USERRA or that Defendant treated similarly situated employees differently. As a means of analysis, the Court will initially discuss the temporal proximity between Mullins' service in Iraq and the termination of his employment, following which it will turn to question of whether there were inconsistencies between the Defendant's proffered reasons for disciplining the Plaintiff and its other actions.

In December, 2006, Plaintiff resumed his employment with Defendant, after his deployment in Iraq. The Defendant fired him on February 28, 2008, about fourteen months later. Moreover, Neal initially imposed discipline on Plaintiff about seven months after he had returned to work. Fourteen months, and even seven, are too long periods of time to raise an inference of a causal connection between protected activity and an adverse employment action in a case alleging retaliation under a statute prohibiting employment discrimination. See e.g., Hamilton v. Starcom Mediavest Group, Inc., 522 F.3d 623, 629 (6th Cir. 2008) (noting that "there is a consensus that proximity alone generally will not suffice where the adverse action occurs more than a few months … after the protected conduct");

Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir. 1999) (noting that "[a]bsent additional evidence, this loose temporal proximity" of "disciplinary actions occur[ing] two to five months after Hafford filed charges" is "insufficient to create a triable issue"); Cooper v. City of N. Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986) (holding that "[t]he mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference [sic] of retaliation").  There is simply no reason why the same standards should not apply to resolving the issue of whether the temporal proximity of the adverse employment action to the protected activity is sufficient to raise an inference of discrimination in a case under the USERRA.  Based upon the above cited authority, this Court concludes that Plaintiff's protected activity, his deployment in Iraq, is not close enough in time to his discharge or even the first discipline that was imposed on him (seven months) to raise an inference that his deployment in Iraq was a motivating factor for either.

Turning to the second factor set forth in Hance, the Plaintiff does not argue that there are inconsistencies between the proffered reason and other actions of the employer.  Rather, he contends that Neal disciplined him for specious reasons, which demonstrates that the evidence raises a genuine issue of material fact concerning the existence of such a motivating factor.  In particular, Plaintiff contends that Neal did not have a basis for imposing discipline on him.  Plaintiff contends that it is for the jury to determine whether his evidence establishes that the discipline imposed upon him was a pretext for discriminating against him on basis of his military service.  To support this argument, Plaintiff has cited Manzer

v. Diamond Shamrock Chemicals Co., 29 F.3d 1078 (6th Cir. 1994), wherein the Sixth Circuit explained the methods of establishing pretext.

Assuming for sake of argument that inconsistencies between the proffered reason and other actions of the employer is the same as pretext, the Court does not agree with Plaintiff that the evidence raises a genuine issue of material fact that the stated reasons for disciplining Plaintiff was a pretext for discriminating against him on the basis of his service with the Ohio National Guard.

In Manzer, the Sixth Circuit discussed the methods by which a plaintiff can establish pretext:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993) (emphasis added and quotation marks omitted). The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." [Anderson v.] Baxter Healthcare, 13 F.3d [1120, 1123-24 (7th Cir. 1994)]. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." Hicks, 509 U.S. at [511], 113 S.Ct. at 2749. As Hicks teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.
>
> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by

the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext or coverup.

29 F.3d at 1084 (emphasis in the original). Accord Anthony v. BTR Automotive Sealing Systems, Inc., 339 F.3d 506 (6th Cir. 2003); Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000); Kline v. Tennessee Valley Authority, 128 F.3d 337, 346-47 (6th Cir. 1997).

The Plaintiff has not presented evidence that he was treated differently than other Defendant's employees, nor has he presented circumstantial evidence, the sheer weight of which makes it more likely than not that the Defendant's explanation for disciplining him is a pretext for discriminating against him because of his military service. Therefore, the second and third means of establishing pretext are not applicable herein. Accordingly, the Court turns to the question of whether the reasons for disciplining and ultimately firing Plaintiff were factually false, i.e., they did not happen.

Although the Plaintiff argues that the discipline imposed upon him was specious and has explanations why he should not have been disciplined, he has not submitted evidence demonstrating that the stated reasons for disciplining him were factually false. For instance, with respect to the second incident of discipline, Plaintiff's failure to follow Defendant's policies concerning its Furnace Replacement Program, it is not controverted that the Defendant permitted a customer to participate in the program without physically returning the old furnace, without any parts removed, to the Dayton branch. Plaintiff does provide evidence, in the form of his affidavit, which could challenge the wisdom of Defendant's modification to the program; however, the point remains uncontroverted that he violated the

policy.[13]  Similarly, with the first and third incidents of discipline, while the Plaintiff has presented evidence which raises a genuine issue of material fact on whether he deserved the discipline imposed upon him, he has not submitted evidence that casts doubt on the facts that his cash bag was left unattended, outside the cash drawer, and that he failed to have a customer sign the correct packing list for an order that had been picked up.

In sum, the fact that Neal may have imposed discipline on the Plaintiff which he did not deserve, in and of itself, does not raise a genuine issue of material fact on the issue of pretext.  It bears emphasis that the USERRA does not prohibit veterans from being discharged.  It merely prohibits employers from discriminating against individuals because of their military service.  The Plaintiff has pointed to no evidence in the record which would support a finding that Neal had an anti-veteran or anti-military bias.  Indeed, the uncontroverted evidence is that Neal is a veteran of the Air Force.[14]

Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact on the question of whether Mullins' military service was a motivating factor in the decision to terminate the Plaintiff's employment. Therefore, it sustains the Defendant's Motion for Summary Judgment (Doc. #17),

---

[13]It is axiomatic that it is not the task of federal courts to review the policy decisions made by employers.

[14]The Plaintiff argues that Neal possesses two character traits not normally associated with veterans, slickness and fussiness.  Even if this Court were to presume for present purposes that Neal is slick and/or fussy and that those character traits are not normally possessed by veterans, Plaintiff has failed to explain how that raises a genuine issue of material fact on the question of whether Neal was motivated by Plaintiff's service in the Ohio National Guard and deployment in Iraq to discipline and ultimately to discharge him.

as it relates to Plaintiff's claim that the Defendant discharged him in violation of the USERRA.

Based upon the foregoing, the Court sustains in part and overrules in part Defendant's Motion for Summary Judgment (Doc. #17).  That motion is overruled as it relates to Plaintiff's claim that Defendant failed to promote him in violation of the USERRA, and is otherwise overruled.

February 11, 2010

/s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.